

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 13-1164 SKG |
| DAVON TAYLOR | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 29, 2012__ in the county of __Baltimore City__ in the _____ District of __Maryland__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1) | Distribution of Heroin |
| 18 U.S.C. Section 2 | Aiding and Abetting |

This criminal complaint is based on these facts:
See attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

TFO James Bradley, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/14/13

_____
Judge's signature

City and state: Baltimore, Maryland

Hon. Susan K. Gauvey, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

Your Affiant, Task Force Officer James Bradley, deposes and states as follows:

1. I am a Detective with the Baltimore Police Department and have been so employed since 1999. I have been deputized as a Task Force Officer with the DEA for approximately two years. I am currently assigned to the DEA's Special Investigations Group (DEA SIG), which investigates large-scale narcotics trafficking organizations in the Baltimore area. During my time as a law enforcement officer, I have participated in numerous investigations of unlawful drug distribution involving the use of confidential informants, undercover transactions, physical and electronic surveillance, telephone toll analysis, investigative interviews, the execution of search warrants, and the recovery of substantial quantities of narcotics, narcotics proceeds, and narcotics paraphernalia. I have reviewed taped conversations, as well as documents and other records relating to narcotics trafficking and money laundering. I have examined records consisting in part of buyers and seller's lists, and pay/owe ledgers. I have interviewed drug dealers, users and confidential informants and have discussed with them the lifestyles, appearance and habits of drug dealers and users. Through training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the possession and use of firearms in connection with trafficking of such drugs, and the methods by which narcotics traffickers collect, store and conceal the proceeds of their illegal activities. I have also become familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, pagers, coded communications or slang-filled telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

2. I make this Affidavit in support of a criminal Complaint charging the defendants, Shawn JACKSON and Davon TAYLOR, with distribution of heroin, in violation of 21 U.S.C. § 841(a)(1) and Aiding and Abetting same, in violation of 18 U.S.C. § 2. I have included in this Affidavit information known to me personally as well as information communicated to me by other law enforcement officers. I have not included all of the information known to law enforcement about this investigation in this Affidavit.

3. On October 29, 2012, your Affiant engaged in a series of telephone communications in an attempt to make contact with Shawn JACKSON. Your Affiant had received information that JACKSON would engage in drug transactions if contacted at a particular phone number. Your Affiant eventually made contact with JACKSON and spoke with JACKSON at the identified cellular telephone number. Your Affiant asked JACKSON if "you good? You gonna be out?" JACKSON replied, "I'm out now." Your Affiant stated, "I want to come see you before it gets bad. I got $200." JACKSON replied, "I'm here." Your Affiant told JACKSON "I'll call you when I get to the church." JACKSON replied, "alright. Hit me."

4. Investigators then met and briefed an undercover officer with the Baltimore Police Department (hereinafter the UC) on the planned operation. The UC was also provided with the same undercover phone that your Affiant had used to contact JACKSON.



5. At approximately 12:30 pm, the UC drove to the 3100 block of West Belvedere Avenue, as instructed, and parked at a corner. The UC then sent a text message, from the UC phone, to JACKSON: "I'm here got 200 with me." JACKSON replied a few minutes later, "O.k."

6. At approximately 12:49 pm, a male, later identified as Davon TAYLOR, walked up to the UC's car and got into the front passenger seat of the car. Inside the car, TAYLOR asked the UC, "two hundred right?" The UC replied, "yeah." TAYLOR handed the UC a clear plastic bag with ten (10) small zip lock bags containing a tan powder substance, suspected heroin. In return, the UC handed TAYLOR $200 in prerecorded BPD funds. TAYLOR then left the UC car and began to walk away. An arrest team was notified of TAYLOR's appearance and location.

7. Members of the arrest team observed TAYLOR get into a silver Acura. Investigators used law enforcement vehicles to attempt to block the Acura from leaving. Investigators then approached the Acura with their badges displayed. The driver of the Acura, later identified as Shawn JACKSON, placed the Acura in reverse and started to drive backwards down West Belvedere Avenue in a reckless manner. As JACKSON did so, the Acura struck a legally parked GMC Yukon. This collision disabled the Acura.

8. Investigators approached the Acura with their weapons drawn. They removed JACKSON from the driver seat; they removed TAYLOR from the rear passenger seat; they removed a third male (who was not charged) from the front passenger seat. During a search incident to arrest of JACKSON's person, investigators recovered $276 in cash and a cellular phone which was found to be the cellular phone contacted by your Affiant and by the UC previously during the day. During a search incident to arrest of TAYLOR's person, investigators recovered $540 in cash, plus the $200 in prerecorded buy money (total $740). While investigators were waiting for a wagon to transport the defendants, JACKSON stated that there was additional money in the Acura. An inventory of the Acura was completed, and investigators recovered $1000 from the rear seat and approximately $8,960 from the trunk.



9. The information described above demonstrates that both TAYLOR and JACKSON participated in the distribution of the heroin obtained by the UC. Taylor personally distributed the heroin to the UC. JACKSON aided and abetted that distribution by making the deal with the UC, by engaging in the phone calls with the UC to make the arrangements for the transactions, and by attempting to secure the getaway.

_____
Detective James Bradley
Baltimore Police Department
TFO, Drug Enforcement Administration

Subscribed to and sworn before me this ___14___ day of May, 2013,

_____
Honorable Susan K. Gauvey
United States Magistrate Judge